IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| **MELISSA DAWN WILLIAMS,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:20-cv-00008-O-BP |
| § | |
| **ANDREW M. SAUL,** § | |
| **Commissioner of Social Security,** § | |
| § | |
| Defendant. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Melissa Dawn Williams ("Williams") filed this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

**I.      STATEMENT OF THE CASE**

Williams was born on May 22, 1964 and obtained a GED. ECF No. 17 at 6. She filed for DIB on December 28, 2016 and for SSI on January 25, 2017. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 14-1 at 16. She alleged that her disability began on February 18, 2012, which she later amended to December 28, 2016. *Id.* The Commissioner initially denied her claims on May 5, 2017 and denied them again upon reconsideration on August 31, 2017. *Id.* Williams requested a hearing, which was held before Administrative Law Judge ("ALJ") Angelita Hamilton on October 10, 2018 via video, with Williams and her attorney present. *Id.* The ALJ issued an unfavorable

decision on February 28, 2019, finding that based on the applications for DIB and SSI, Williams was not disabled. Tr. 25.

The ALJ employed the statutory five-step analysis and established during step one that Williams had not engaged in substantial gainful activity since December 28, 2016, the amended alleged disability onset date. Tr. 18. At step two, the ALJ determined that Williams had the severe impairments of obesity and degenerative disc disease. *Id.* At step three, the ALJ found that Williams's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 20. She found that Williams "had the residual functional capacity to perform medium work as defined in 20 CFR 404.167(c) and 416.967(c) except she can never climb ladders, ropes or scaffolds. In addition, the claimant can occasionally climb ramps and stairs. She can frequently balance and occasionally stoop kneel, crouch, or crawl." Tr. 20-21. At step four, the ALJ found that Williams was able to perform her past relevant work as a home health aide, so a finding of "not disabled" was appropriate. Tr. 24-25.

The Appeals Council denied review on November 26, 2019. Tr. 6. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II. STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 404 *et seq.*, governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Part 404 (2019). The SSA defines a disability, in relevant part, as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1) (2019).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520 (2019). First, if a claimant is engaged in any substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b) (2019). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b) (2019)). Second, to be disabled, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c) (2019). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d) (2019). Fourth, if the claimant's medical status alone does not constitute a disability, she can qualify for disability benefits if her impairments prevent her from returning to her past relevant work. 20 C.F.R. § 404.1520(f) (2019). At this step, the ALJ considers the claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.945(a)(1) (2019). Fifth, even if the claimant cannot perform her past relevant work, a finding of disability is only appropriate if her impairments prevent her from making an adjustment to other work after considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g) (2019).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted).

### III.   ANALYSIS

Williams raises three issues on appeal. She claims that the ALJ did not (1) properly consider all of Williams's severe mental impairments in determining her RFC, (2) consider the limitations set forth in the medical opinion evidence, and (3) consider Williams's global assessment of functioning (GAF) scores in her RFC determination. ECF No. 17 at 5.

### A.   The ALJ used the correct severity standard and properly considered all of Williams's severe impairments when determining her RFC.

Williams alleges that the ALJ applied an improper legal standard to evaluate her severe impairments. ECF No. 17 at 11. She argues that defining a non-severe impairment as one that has "'no more than 'mild' limitation in any of the functional area' and therefore 'it is non-severe'" is inconsistent with *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). *Id.* The Commissioner contends that the ALJ's statement "mirrors the requirements of *Stone*," and meets the Fifth Circuit's requirements for presenting the severity standard. ECF No. 18 at 4. The Commissioner

also contends that substantial evidence supports the ALJ's step two determination. *Id.*

Although the ALJ did not use the exact language set forth in *Stone*, she applied the correct severity standard. At step two of the sequential analysis, the ALJ must consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii) (2019). To comply with this regulation, the ALJ "must determine whether any identified impairments are 'severe' or 'not severe.'" *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)(ii), (c)). To evaluate whether a claimant's medical condition qualifies as a "severe impairment," the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2019). The Fifth Circuit has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1102-05. Instead, the Fifth Circuit established in *Stone* that an impairment is not severe only when it is a "slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (internal punctuation and quotation marks omitted).

To prevent the regulatory standard for severity from limiting a claimant's rights, the Fifth Circuit held in *Stone* that it would "assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id.* at 1106. Nevertheless, a case will not be remanded simply because the ALJ did not use the "magic words[,]" but only when there is no indication that the ALJ applied the correct standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

Here, the ALJ did not cite to *Stone* or apply the *Stone* standard in her decision. *See* Tr. 19-32. Instead, she stated the severity standard as follows:

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522 and 416.922; Social Security Rulings (SSRs) 85-28 and 16-3p).

Tr. 20. The *Stone* severity standard does not allow for any interference with work ability, not even minimal interference. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009).

In the Fifth Circuit, an ALJ's failure to cite to *Stone* does not mandate automatic reversal and remand. *Gibbons v. Colvin*, No. 3:12-cv-00427-BH, 2013 WL 1293902, at *14 (N.D. Tex. Mar. 30, 2013). Instead, application of a harmless error analysis is appropriate where the ALJ proceeds past step two and considers the impairments in the subsequent stages of the sequential evaluation process. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (per curiam) (applying harmless error analysis where the ALJ failed to cite *Stone* at step two, but proceeded to steps four and five of the sequential evaluation process); *see also Garcia v. Astrue*, Civil No. M-08-264, 2012 WL 13716, at *13 (S.D. Tex. Jan. 3, 2012) (noting that the Fifth Circuit "has consistently held that an ALJ's failure to assess the severity of a claimant's impairments at step two is not a basis for remand where the ALJ proceeds beyond step two and determines that a claimant, despite severe impairments, retained the residual functional capacity to do other work.") (citations and punctuation omitted). Therefore, to prevail on her objection, Williams must show that the ALJ's error in step two was not harmless. *See Graves*, 837 F.3d at 593. Harmless error exists when "it is inconceivable that a different administrative conclusion would have been reached absent the error." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citation omitted).

Williams argues that it is irrelevant that the ALJ proceeded past step two because the ALJ did not account for the effects of Williams's mental impairment in her RFC determination. ECF No. 17 at 13. The Commissioner's argument here is not that *Stone* does not apply, but that its standard is not inconsistent with the standard the ALJ applied, but even if it were, the error would be harmless. ECF No. 18 at 4-5. Any error that the ALJ made in applying an incorrect severity standard was harmless because the ALJ did not reject Williams's claims at step two.

Additionally, substantial evidence in the record supported the ALJ's determination that Williams's depressive disorder was not severe. The ALJ properly considered the evidence related to Williams's depression disorder. On April 24, 2017, Williams saw Dr. Leon Morris for a mental status examination. Tr. 355. Dr. Morris noted that Williams's "thought processes were logical and goal-directed, and the examination was not indicative of a thought disorder." Tr. 358. On August 7, 2018, Williams saw Ruth Ottman, LPC, at the Helen Farabee Center, for a case management meeting. Tr. 422-23. Ms. Ottman noted that Williams was "doing very well in her recovery process." Tr. 423. Additionally, Williams indicated on a "PHQ9" form that she was not experiencing any problems typically associated with depression disorder such as "little interest or pleasure in doing things … feeling tired or having little energy … trouble concentrating on things." Tr. 424. The ALJ considered this evidence, but decided that "the claimant's medically determinable mental impairment of depression disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." Tr. 19.

Based on the evidence and the ALJ's analysis, it is inconceivable that the ALJ would have reached a different conclusion—that Williams's depression disorder was severe—if she had applied the *Stone* standard rather than the standard that she applied. Therefore, the ALJ's error in

failing to apply the *Stone* severity standard while analyzing Williams's depression disorder was harmless.

### B.  Substantial evidence supported the ALJ's RFC determination.

Williams argues that the ALJ did not properly consider all of the evidence presented by Dr. Morris after she gave Dr. Morris's opinion great weight. ECF No. 17 at 15. Williams claims that because the ALJ rejected Dr. Morris's determination that Williams was able to perform "one-two-step oral instructions," substantial evidence did not support the RFC determination evidence. *Id.* at 15-16. Further, Williams argues the ALJ erred because she selectively chose opinions that supported her RFC determination and did not consider other evidence Dr. Morris offered. *Id.* at 16-17. Finally, Williams states that this error was not harmless because the ALJ determined Williams could perform her past relevant work as a home health aide, but this would require a skill level beyond what was assessed by Dr. Morris. *Id.* at 17. The Commissioner argues that Dr. Morris's evaluation set a baseline, not a limit on Williams's capabilities to perform certain instructions. ECF No. 18 at 6. The Commissioner also asserts that the evidence and medical history Williams provided to Dr. Morris did not support the limitations she now asserts. Therefore, the Commissioner argues, substantial evidence supports the ALJ's decision. *Id.*

By definition, a claimant's RFC is the most the claimant can still do despite the claimant's impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020). The ALJ is not required to expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-cv-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422-23 (5th Cir. 2008) (per curiam)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996).

8

The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. The ALJ considers the nature and extent of the claimant's physical, mental, and other relevant limitations. 20 C.F.R. § 416.945.

In determining a claimant's physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* at § 416.945(b). In determining the claimant's mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* at § 416.945(c). The ALJ uses what is known as the "paragraph B criteria" to rate the degree of the claimant's mental limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at § 416.920a; *see id.* Part 404, Subpart P, Appendix 1. Finally, the ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 416.945(d).

Williams asserts that the ALJ gave great weight to Dr. Morris's opinion, but "ignored" his opinions regarding Williams's ability to carry out instructions. ECF No. 17 at 16. When determining the extent of a claimant's ability to do physical and mental work activities, the ALJ must consider medical opinions together with the rest of the relevant evidence in the record. 20 C.F.R. § 416.945(a)(3). Williams has not shown a lack of credible evidence or medical findings that support the ALJ's RFC finding. Williams argues that the ALJ "erred by picking and choosing from Dr. Morris' opinion only those portions that supported her decision without explanation." ECF No. 17 at 16. However, it is the claimant who bears the burden of presenting evidence of disability, and the ALJ's duty is to develop all relevant facts. *See Audler*, 501 F.3d at 448; *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015). To upset the ALJ's decision, the plaintiff must show that there was insufficient evidence for a reasonable person to reach the same conclusion as the

9

ALJ, not that some contradictory evidence might exist. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The ALJ did not wholly ignore Dr. Morris's medical opinion. Instead, she found that the medical record did not support a determination that the Plaintiff was limited to only complete tasks with "one-two-step oral instructions." Tr. 23-24. Plaintiff's disagreement with the ALJ's RFC does not carry her burden of establishing that no substantial evidence supports the ALJ's determination. Here, the ALJ cited evidence that supports her RFC determination. As a result, reversal of the ALJ's opinion is not required on this point.

### C. The ALJ erred by not considering the GAF scores assigned by Dr. Naidoo.

Finally, Williams claims that reversal is required because the ALJ did not consider or weigh the GAF scores assigned by Dr. Naidoo and staff at the Helen Farabee Center. ECF No. 17 at 17-18. The Commissioner argues that the ALJ was not required to consider those scores because (1) the score assigned by Dr. Naidoo was dated November 9, 2016, six weeks prior to the December 28, 2016 disability onset date; (2) the other GAF scores in the record that were assigned by non-medical sources do not constitute medical opinions; and (3) the GAF scores conflict with other evidence that Williams had a normal mental status after the alleged disability onset date. ECF No. 18 at 7-8.

An ALJ "generally cannot reject a medical opinion without providing an explanation for that rejection, even if good reasons exist for disregarding the opinion. Failure to explain the rejection of a medical opinion justifies a remand." *Winston v. Berryhill*, 755 F. App'x 395, 398 (5th Cir. 2018) (citing *Kneeland v. Berryhill*, 850 F.3d 749, 759-61 (5th Cir. 2017)). "The Social Security Administration has said that GAF scores 'should be considered as medical opinion evidence under 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) if they come from an acceptable medical source.' *Soc. Sec. Disab. Claims Handbook* § 2:15 n.40 (citing AM-13066 REV)." *Wellington v. Berryhill*, 878 F.3d 867, 871 n.1 (9th Cir. 2017).

The issue here turns on whether the ALJ was required to consider the GAF score assigned by Dr. Naidoo prior to the disability onset date. An ALJ must consider all medical opinions in the record. *See* 20 C.F.R. § 404.1527(c)(2). And, the social security regulations do not include an exception for opinions that pre-date a claimant's disability onset date. *Id.* An ALJ may not disregard a medical opinion just because the opinion predates the disability onset date. *Davidson v. Colvin*, 164 F. Supp. 3d 926 (N.D. Tex. 2015). In this case, the ALJ referred to Dr. Naidoo's November 9, 2016 examination of Williams in arriving at her RFC determination, but she did not mention the GAF score Dr. Naidoo assigned to Williams on that date. Tr. 22. As in *Ayala v. Saul*, the ALJ "was required to evaluate every medical opinion of record—including GAF scores—and … the ALJ 'did not specifically reference [the plaintiff's] GAF scores.'" No. 7:19-cv-00024-O-BP, 2020 WL 1226879, at *3 (N.D. Tex. Mar. 3, 2020). As in *Ayala*, the ALJ here did not sufficiently consider Dr. Naidoo's GAF score, and this omission constitutes a reversible legal error. *Id.* at *4.

The ALJ's omission of references to the GAF scores that other staff members at the Helen Farabee Center provided, however, did not constitute reversible error. According to applicable regulations, licensed professional counselors and nurse practitioners are not "acceptable medical sources." *Willoughby o/b/o Willoughby v. Comm'r, SSA*, No. 4:18-cv-00150-CAN, 2019 WL 1429663, at *7 (E.D. Tex. Mar. 29, 2019) (citing 20 C.F.R. § 404.1513(a)); *Matthews v. Colvin*, 4:15-cv-00169-O-BL, 2016 WL 8710706, at *4 (N.D. Tex. Feb. 5, 2016), *rec. adopted*, No. 4:15-cv-00169-O-BL, 2016 WL 1054599 (N.D. Tex. Mar. 17, 2016) (citing *Thibodeaux v. Astrue*, 324 F. App'x 440, 445 (5th Cir. 2009)). Only "acceptable medical sources can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight." *Thibodeaux*, 324 F. App'x at 445. The ALJ was required to evaluate other medical sources to some extent. *See* SSR 06-03p, 2006

11

WL 2329939, at *3. ("Opinions from these [other] sources, who are not technically deemed 'acceptable medical sources' under our rules … should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file"). The ALJ discussed Williams's treatment and medical records at the Helen Farabee Center and cited to those records in her decision. Tr. 20-24. Accordingly, the ALJ sufficiently considered the other non-medical source evidence, and she did not commit reversible error in not specifically referring to those GAF scores in her decision.

### IV. CONCLUSION

The ALJ properly considered the severity of Williams's mental impairments, substantial evidence supported her determination regarding those impairments, and the ALJ did not commit reversible error in not specifically discussing GAF scores provided by other sources. However, the ALJ did reversibly err by not discussing the GAF score Dr. Naidoo assigned to Williams on November 9, 2016. Because of this reversible error, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2019) and Fed. R. Civ. P. 72(b)(1) (2019). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual

findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on December 30, 2020.

                                            */s/ Hal R. Ray, Jr.*
                                            Hal R. Ray, Jr.
                                            UNITED STATES MAGISTRATE JUDGE